Mr. West, whenever you're ready. Thank you, Your Honor. Good afternoon. May it please the Court, my name is Gaines West, and I represent the United States of America and my client, Dr. Howard Beck. In all the years of reading FCA and STAAR cases and AKA cases, I've not read one that have facts like ours. Actual knowledge and willful intent is laced throughout all of these cases, but listen to what Glenn Frick, the Director of Finance for the Covenant Medical Group, the group that hired the doctors, wrote to fellow Covenant executives, I hope we don't go to jail for this guy. That's at ROA 9205. Who was he referring to? He was referring to Dr. Juwan Kurdi. Dr. Kurdi's compensation was through the roof. So much so that Steve Rice, their own expert on compensation, told Covenant that Kurdi's compensation of $2.2 million a year couldn't be justified and support a fair market value. Before you get too deeply into the merits, are you going to address the timeliness of the appeal? Certainly, I'll be happy to, Your Honor. What looms is the Edwards decision, and I'm sure you know it well. I know the Edwards decision. You agree we're bound by it, whether it's right or wrong, or not? Well, I think the Edwards decision doesn't get you to the place where the jurisdictional issue is satisfied in the appellee's favor. I believe that in this case, we filed our 59E on December the 10th. Judge Cummings decided for some reason that a certificate of conference should be attached to the 59E. Don't see that in the Northern District Rules of Texas, but responding to his honor's desires on the day that he told us that we were not going to go forward because of the lack of a certificate of conference, we simply provided that certificate of conference and refiled the 59E on that same day, which was December the 14th. You know, not only the Edwards case here is important, but the cases dealing with this second filing is important. And in the instruction under A4A44 of the Federal Rules of Appellate Procedure, where the second of those motions, which was the one that we filed, is ruled on eventually. The later filed motion, your clock wouldn't run until the later filed motion is decided. Correct, because we weren't trying to game the system. I mean, it is a tricky little puzzle. That seems to qualify under Rule 4, what you did, especially given the circumstances. It's an arguably nonconforming filing that's just rejected and you refile. But under Edwards, it is the identical motion, and the first one was denied, and Rule 4 would seem to say you could file a protective notice. You know, but Edwards, I don't believe, again, gets us to the point where we, where the court loses jurisdiction because, first of all, it was a motion panel. It was brought up on a sui sponte motion. I don't believe it would be— It's hard to harmonize it with the text Rule 4, isn't it? It absolutely is. But I will be candid and say I agree with you on that. The trouble is it does seem binding. How do we distinguish it, given your circumstances? Do we say no evidence of gamesmanship? Do we say procedural rule, not merits rule? I think what you would do is follow Robbins' view of that. Right, but Robbins was a Sixth Circuit case from years before. We're bound— In 2013, but it dealt with exactly the same issues. I know, but it was before Edwards. It was before Edwards. So we're bound by Edwards. But Your Honor, I think Edwards doesn't get them to— Okay, and I'm asking you, if you were writing my decision just for me, how would you say, oh, the rule of law announced in Edwards isn't applicable because? Because there was a second filing within the 28 days. And the rule in Edwards was a rule that was developed sui sponte. There was no briefing on that rule. I know, but that's criticizing the Edwards decision. I mean, that would be an en banc matter. I understand. Let's put it another way. How should we lay out this rule if we agree with you? I think you lay out the rule in the way that Robbins' case in the Sixth Circuit laid it out, and that was simply to look at the purpose of the filing. And if it was filed within the 28 days—it used to be 10 days, of course—but if it was no gamesmanship, attempting to extend jurisdiction of the court, then I would write it in the way that in this situation, we have a rule that the judge felt needed a certificate of conference attached to the motion, and it would be patently unfair and unjust to take a plaintiff and not allow them to proceed because they didn't have a certificate of conference on a 59E motion, which— Let me ask you a question, counsel. I can't recall. Was the second motion styled corrected motion, or did it relate back to the first motion filed? It was the exact same motion. It was not named anything. It simply has a certificate of conference attached to it. Well, I mean, so I get that, but I'm sort of grappling with the same thing. My colleagues are. You know, the rule says what it says, but our case law says what it says in Edwards, and that is if it's an identical motion that's filed, it doesn't toll, and so what do we do with this? I mean, the gamesmanship standard that I guess is in that Sixth Circuit unpublished case, are we then requiring some sort of evidentiary inquiry every time there's a subsequent motion? I mean, that's not hard, but maybe it is. I don't think so, and again, I don't think Edwards is precedential here simply because of the way it was decided, the panel that decided it. My good friend Justice Willard, I believe, wrote that opinion, but I don't believe that it applies here for those reasons, that we have a second motion that was filed within the 28 days. There was no gamesmanship. We weren't trying to extend the deadline. When you say patently unfair, and I happen to agree, except you could have filed a protective notice. It's possible that that was something to do, but again, I think that would maybe be important if you were changing that motion. We didn't change that motion in any way. Okay. You've been very generous to go into it. I know you want to get to the merits. Is your merits argument, and I'm simplifying things, is that the district court overstringently applied the public disclosure bar legally, or is it that the district court overlooked allegations you made as to fraud? Yes and yes. Okay. What's the case that the district court misapplied? And then go ahead and tell me what the evidence is that the district court overlooked. The Solomon test. I mean, he accepted the Solomon test and the public disclosure bar as having been satisfied, and it wasn't satisfied. Okay. But that's really arguing that he just overlooked allegations that you made. And so . . . Well, he did overlook that. And what is the most specific allegation that wasn't in those four categories that were publicly disclosed? What is the sort of thing? Well, the evidence that we were able to bring forth, which we did at the time, was at ROA 11-285 to 11-306 with Dr. Beck's affidavit, ROA 176 through 177, our first amended complaint with paragraphs especially 61 and 64, ROA 11-305, Dr. Beck's deposition, where he was uniquely qualified to analyze financial structure and incentive referral programs. And, you know, he did provide the information that no one else could provide. But if all he did was crunch the numbers more particularly, those numbers were publicly available . . . He didn't . . . But, Your Honor, I'm sorry to interrupt. No, no. Do interrupt. He did not just crunch the numbers in a different way. He provided the . . . he provided the . . . there was an X and a Y to get to Z, as in the Omricon case. I'm asking you to be specific with the X and the Y, not just the pages, but what's the sort of the meat of what he saw that hadn't been publicly disclosed? What he saw was that there was a referral system in place, and he had talked to doctors and executives in his own home of Covenant Medical Center, and . . . And the conversation that he describes that's the most damning is which one? Which would you . . . I know you say several, but which would you say is the one that's most . . . Well, there would be two most damning . . . Okay. . . . that he got, and that would be with doctors in Covenant Medical System that were working there that said their referrals were being tracked, and then he got that same confirmation from executives. Okay. All right. But just the fact that referrals are being tracked doesn't show scienter or fraud. But I'm not through giving you my . . . Okay. Keep going, then. All right. Thank you. But that's why I kept asking you for the most . . . the smoking gun. What did he . . . what did he add that isn't just number-based? Well, he had what no one else had, and that was the knowledge of the medical system in Lubbock. He had been there three decades, and he was able to provide information that no one else had. Mm-hmm. You took the numbers that were generally just, you know, reported in the Wall Street Journal, 990 numbers, compensations being paid, but what they didn't have was seeing this closed-loop system . . . Mm-hmm. . . . where the doctors were being encouraged to refer and paid to be referred their patients into the system. At . . . May I interrupt just one second? Yes. If the public disclosure bar is applied, would any of your claims, Glenn's claims, survive? Well, I think that the public disclosure bar was intended before the 2010 amendment to be jurisdictional. It is no longer jurisdictional, and we're here on a motion for summary judgment. And so, what I believe is, is that we have plenty of facts. I mean, this is a case that is replete with facts that should get us to a position where we are able to go forward with this case and not have it dismissed at a summary judgment stage. The . . . if I could also refer you to the disclosures to the Department of Justice that were filed. Also, the Burrell memo that showed there was a plan to steer cardiac referrals for in-and-out patient treatments. I can . . . Dr. Beck talked to these doctors, and that was at ROA 4506. And Judge Cumming just got this wrong. Dr. Beck talked to these doctors, ROA what? 4506. What will I find at 4506? What you'll find is his statement in his affidavit about his discussion with doctors who revealed that they were being tracked and that they were being encouraged to refer patients into the system. Tracked and encouraged. Yes. Yes, both. Yes. Okay. Dr. Jawan Kurdi is the same doctor, the one that I started telling you about, that also took the stand in his deposition and pled the Fifth Amendment for nearly two hours. And I asked our judge, Judge Cummings, to let me add him as a defendant to this case, and he wouldn't do that. He also wouldn't allow us to go beyond the five exemplar doctors that we pled in our discovery. He restricted our discovery. It was like we were fighting this battle with both hands tied behind our back. But let me give you one other email that we found after scouring the record, and that's at ROI 9198. And this is an email from Brian Kuska, who's the Director of Finance of Hospital Operations for the Covenant Health System. And he wrote it to Glenn Frick, the Director of Finance. He wrote it to Steve McKamey, who was president of the Covenant Medical Group, the group that hired doctors, and to Kristen Kothman, who was the assistant under McKamey at the time. Here's what he said. Right now, we don't have a way to eliminate or really reduce the fixed cost continued or cost tied to him, talking about Dr. Kurdi. I would worry that if we did not have Kurdi admitting here, then we would lose the contribution margin. And the contribution margin, they testified, was the difference between what they paid the doctors and the expenses and what they got out of the referrals. So they tracked those. It was important to them. And shall be stuck with a large portion of the $5.6 million in fixed costs tied to him. His contribution margin per patient is not as good as the rest of the cardiac service line of docs. I don't think his payer mix is very good. The bottom line, that email right there strikes the issue of the AKS. It strikes the issue of the Stark Law. And I see that I'm out of time. You have rebuttal time. Thank you, sir. Thank you. Mr. Coffey? Good afternoon, your honors. Kevin Coffey on behalf of the appellees, and may it please the court. Your honors, there are four reasons to dismiss Dr. Beck's key TAM complaint. Any one of which would be sufficient to affirm Judge Cummings' decision below. First, as your honors mentioned, this court lacks jurisdiction to hear this appeal because Dr. Beck failed to file a timely notice of appeal. Stop right there if we could, because I am interested in this issue. But you heard the discussion with counsel opposite. Are we really going to literally foreclose our consideration of this case based on the technicality here? I mean, they refiled the same day. I mean, you know the history of all of this. So tell me the authority that's in support of a conclusion that we lack jurisdiction. Yes, your honor. So this is a clear violation of the rules. Pursuant to Edwards, the successive motion was identical to the first motion except for a technicality, the certification of conference. And it did absolutely nothing to toll the 30-day period. But there wasn't a decision or a denial of the motion on the merits on the first go-round. There wasn't, but Judge Cummings found that it was identical and he dismissed it for the same reason. So if the judge had said, well, I'm going to give you sort of non-protonk the original filing date, just correct, get the certificate of conference in. Sort of like what we would do here. I think the clerk's office will let you correct a deficiency in your briefing. You don't get a new filing as of the day you filed the corrections. You get the old filing when you made the first attempt that wasn't quite there. If the district court had done that, we wouldn't even be here, right? Thank you, Judge. Perhaps, but the district court didn't do that. And it's a clear violation of the rules. Either the rules mean something or they don't. I was going to think, going where you're going, it's not a violation really of the rules. I mean, the second motion under Rule 59 seems to be, or under our rules seems to be envisioned. But the question is, what about Edwards? And what about the other precedent that our court has issued? And I would say, Judge, that the precedent stands for the proposition that if it's an identical successive motion on the same grounds and it's filed, it does nothing to pause or reset the 30-day clock. Dr. Beck filed it more than 30 days and pursuant to the rule, it is a clear violation. But again, same question. When you say pursuant to the rule, it's not pursuant to the text of Rule 4. It's pursuant to the gloss we gave in Edwards. Do you know of any other circuit that applies that identicality bar? I do, Your Honor. So the 11th Circuit in the Valentine v. BAC home loan case, actually the facts of that case are identical to this one. The relator there filed a Rule 59e motion that was denied because there was a lack of certificate of conference. And the judge in that case dismissed for that reason. The relator later filed an identical motion. Timely. The 11th Circuit held that timeliness calculation will not include the amended Rule 59e motion. Was the later filing itself still timely? It was, yeah. I believe it was, Judge, yes. Okay. So you're not only saying we're bound, but you're doubling down and reassuring us that you think Edwards is correct. It's correct. I believe it's a correct interpretation. In Valentine, the court actually cited the 5th Circuit with respect to... That makes me more worried. With respect to if it's an identical successive motion that does nothing at all to the 30-day period. Do you want to speak quickly to his suggestion that Robbins distinguishes between merits and procedure? This was essentially nonconforming, and therefore the second one was not a second one. It was the original one corrected. Judge, there's no authority in this circuit... No, Robbins. I'm asking you to discuss the wisdom of Robbins. And respectfully, Your Honor, either the rules mean something in this case, or they don't, or the Edwards decision does. We stand on our brief on that point. No, but I'm asking you to tell me whether Robbins is correctly decided or not. I know what our law is. Speak to Robbins. Are the two irreconcilable, and Robbins is wrong? I believe the Edwards decision is the correct holding. Okay, but do you not want to answer my question? Could you critique Robbins? Robbins is wrong. Yes, Your Honor. So to put it another way, your answer to the injustice that would be caused is file the notice of appeal as soon as you get the first denial, even if it's technical. That's right. There is a manner to do it appropriately and to avoid what has happened here, and that wasn't done in this matter. Now, if there were multiple defendants, and one filed, second one files, identical motion to the first, first is denied under Edwards, is the second out of luck, no appeal, if 30 days elapses? Even though that second defendant, multiple defendants, second defendant's motion was not decided within the time period. If it was an identical motion and if it was... Identical in substance, yes. Arguably, I suppose that's the case, Judge, yes. So the logic of Edwards is that second defendant gets no appeal because the district court doesn't decide it within time? Well, I apologize. I misunderstood your question, Judge. If in this hypothetical situation the defendant in that case had filed a post-judgment motion under Rule 59 or some other rule that was denied and that defendant filed another identical, then it would apply. Multi-defendant case. Files same thing, identical, but not denied until after. What's the consequence under Edwards? Uh, Judge, I apologize. I can't speak to what the court would do in that circumstance, but... It's fine. Um, you... Go ahead. As far as I'm concerned, you can move to the merits. Yes, Judge. Uh, Your Honors, this is precisely the type of action that the False Claims Act Public Disclosure Bar was designed to prevent. Dr. Beck never had any independent information to support his allegation that Covenant Medical Group overpaid its employed physicians in an effort to induce their referrals back to Covenant Medical Center. He never worked at Covenant Medical Group. He never had access to information about physician comp or physician productivity or physician referrals. Until a discovery commenced in this matter, he had never seen a physician employment agreement. So when he went to draft his complaint, he did literally what any human being, anybody could have done with access to the Internet and a computer. He-he put together his complaint based on a distortion of data from four sources of public information, and then he filed, uh, his complaint. And that's what the district court found. That's correct, Your Honor. Judge Cummings... The entirety of his claims, the critical elements of it were all in the public domain because the pay was so high. Uh, yes, Your Honor. Judge Cummings found that the complaint was entirely based on... And the critical elements were entirely based... Now, under this court's decision in Freed, that doesn't even matter. It doesn't need to be entirely based on the public information. What this court held in that case is that even if the complaint is just partly based... Before the 2010 amendment, right? Yes, it is, Your Honor. I... What I... What my concern is-is not so much the law. My concern is-is when the court says he didn't add anything to the public high pay numbers, correct me if I'm wrong, Beck said in his affidavit that he spoke to identified doctors like Dr. Burke. And in that paragraph, paragraph 34, Burke told him, well, my pay's really high because of all the ancillaries that were referred to CMC. How isn't that... That's scienter. That's fraud. That's not just high pay. Well... So where in the... I guess the question is where in the four categories of publicly disclosed high pay information is there anything about doctors admitting to Beck that they were receiving money for the referrals? Well, Judge, and there's a few things about those conversations, particularly the one with Dr. Burke. Number one, the False Claims Act requires Dr. Beck to provide all material evidence at the outside and provide it to the government. Those conversations were not in the complaint and they were not in the disclosure statement. They were in the amended disclosure statement. They were in the amended disclosure statement which came later. He had a statutory obligation to provide at the time of filing his complaint. Is that how the District Court ruled here? It found... Yes, Judge, it found that with respect to... I didn't... The only place the District Court even talks about conversations with doctors is in footnote 13. It never mentions anything about the conversation with Dr. Burke. That's why the District Court said everything was subsumed in public data. This answer isn't about stuff being in public data. This answer is he didn't disclose it on time. And I would say too, in addition to the fact that he failed to comply with the statutory obligation to disclose it timely, there's no evidence in the record that Dr. Beck learned the critical elements of the complaint from that conversation with Dr. Burke. Dr. Burke testified himself that he had never spoken to Dr. Beck about physician compensation or the concept... That's my problem. How can you decide at summary judgment when Dr. Burke flatly denies exactly what Dr. Beck says he said? That's a disputed fact. Well, and this Court has held that it's a long-standing principle that conclusory statements, speculation, unsubstantiated assertions are not material facts, Your Honor. That's getting more problematic. I mean, how is this conclusory? He's identifying a specific statement made by a doctor working for the hospital system. How is that conclusory? An affidavit is going to be self-serving, yes, but what's the best authority that we can just disregard that statement? Well, and I don't think the Court needs to disregard the statement at all, Your Honor. This Court, again, held in Freed that even if the complaint is just partially based on the public disclosures, in this case it was. Judge Cummings found that it was entirely based on the public disclosures. Every piece of it, if you look... Okay, I know. Well, okay. And I agree with you. If you look at Freed, that language in Freed is difficult because it's partly based. Even partly based is barred. I'm not sure that's accurate. You can tell me that it is in post-2010 case law, but as soon as you shift and say entirely based, I just can't accept that because nothing in the public data had anything to do with why higher pay. What Beck is contributing is I spoke to the doctors and they admitted it was because of fraud. They were getting kickbacks. That's a huge cienter extra that the government, the disclosures never embrace. And, Your Honor, accepting that statement is true. That does nothing to establish an underlying violation of the anti-kickback statute or the Star Claw, which is required to prove falsity in a false claims act. Okay, we'll go one by one on that because on the anti-kickback you're saying the safe harbor provision applies or what's your best argument on the anti-kickback provision? And so we're going to, Judge, we'll have to take the elements one at a time and to each defendant because the facts in the law will apply a little bit differently. But the AKS prohibits somebody from knowingly and willfully providing remuneration to induce referrals. There's no evidence and Dr. Beck did not argue on appeal that St. Joseph provided remuneration. With respect to Covenant Medical Group the law is very clear that compensation paid by an employer to an employee is simply not remuneration. It is not. And therefore the compensation provided by Covenant Medical Group to its employee physicians cannot be remuneration. I'm sure when you say law is very clear it's in your brief but give me the best Fifth Circuit case that says that or any circuit because I thought it was somewhat debated among district courts as to that proposition. And Judge Your Honor the cases there's one in this circuit it's the Northern District of Texas that's Walby Vista Do you have any circuit law on that point that you say is so clear? I do not. I have another case the Halifax case from another district that both have adopted that principle. And as well the Centers for Medicare and Medicaid Services have come out and explicitly said the same thing that an employer is permitted to pay an employee in any manner that it deems appropriate and that's exactly what they've done here Judge and so without remuneration Dr. Beck cannot prove the essential elements of  There is no money whatsoever that Covenant Health System provided money to physicians to induce referrals in this case. Dr. Beck's entire premise and argument is that Covenant Health System provided capital infusion to Covenant Medical Group and that is somehow the kickback here. But again there's no evidence in the record of that at all and in fact Stephen Rice who is the consultant for Covenant Health System testified that it's a very common practice for a consolidated health care system like Covenant to support its affiliated physician practice especially when the system is a charitable organization whose mission and responsibility is to provide care to the community and in fact that's exactly what they were doing in this case Your Honor. Is there any evidence that the defendants acted knowingly under the FCA? Judge there is no evidence of that whatsoever in fact the evidence is clear in this case that Covenant's intent and conduct and the conduct of General McCamey retired three-star general who was the chief executive for Covenant Medical Group has always been entirely not just partially but entirely consistent with law abiding intent now Stephen Rice testified that pursuant to his testimony his number one goal was to reduce costs across the board and in order to do that they lowered compensation paid to the physicians not because he was worried about fair market value he testified to that at ROA 5941 he brought in a new valuation consultant integrated healthcare solutions that's Stephen Rice's company and what he did was he worked to bring down compensation on a per per percent and he brought it down from the 75th percentile to the 50th percentile for something like 120 physicians and he did that off the bat that is not conduct that avoid any kind of exodus and again to maintain the organization's mission to continue providing excellent care to the community of west Texas they also used compensation manuals provided by IHS something put together on a yearly basis and that is how the organization judged the fair market value of the compensation provided and they conducted compensation audits with the assistance of IHS throughout the state for the referrals that would be evidence of knowing violation and so again going back to the bare elements of the false claims act and the AKS there simply cannot be an AKS violation there simply cannot be a stark law violation and if there's no violation of their statutes there's no knowing violation of the false claims act and again the record is replete with evidence showing that the conduct was entirely consistent with the law what did the district court I think he said they didn't relate to compensation I just have a real difficult time harmonizing that with what he attributes to Dr. Burke specifically about compensation and the issue that was fair market value and Dr. Burke has said throughout the record he cannot remember those conversations through his deposition he could not provide specific facts that were brought up during those conversations about statements about the referrals and things like that now the same is true judge with respect to the star claw covenant medical group is not a DHS entity St. Joseph is not a DHS entity and the only remaining defendant that could be a DHS entity and could possibly have the star claw apply to it is covenant health system now the second essential element to a star claw violation is showing there is a direct or indirect compensation arrangement and there is no evidence in the record your honors that there was such a relationship in fact your threshold argument this issue was waived judge the issue was waived because Dr. Beck did not bring up the first essential element which is the  disclosure bar the public disclosure bar applies has that statement been reiterated it's been reiterated in Solomon Jamison I believe it was reiterated in the Schweitzer matter your honor so that has become a long standing principle in the fifth circuit Dr. Beck's complaint is clearly based upon at least in part public disclosures cited throughout they provide the critical elements of the complaint here's why Dr. Beck all he did was he pulled the 990s for covenant medical group he identified the highest compensated physicians on those forms and he went to another public source he compared the salaries and he reached the conclusion that any physician paid at or above the 90th percentile that's all he did literally anybody with a computer could have done that my difficulty is I thought he said he had more information that would suggest it isn't just high numbers for whatever reason turn around but it wasn't just high numbers in order to kick back money the doctors inside the system told him that we have gone over it thank you your honor I Charles L. M. I think was loosely worded distinguished on the facts the facts in that case dealt with the 50B motion and arbitration totally different situation than we have here I believe that Charles L. M. stood for the proposition that you had a filing outside of that 10 days and they were gaming the system to try to get an additional time plus the other distinguishing factor in Charles L. M. is that our 59E had not been ruled on in Charles L. M. had been ruled on but you might want to see the valentine decision is opposing counsel right that other circuits have applied the same rigid identicality rule no I don't think so and I don't think that we have gone back to the courts of chancery and hopping on one foot and saying mother may I think facts are distinguishable I don't think it has value in this case you may want to look at all American pipeline at 23 F4 393 it's a 2022 decision that did not apply the rule of reason because the other panel used such loose language so I think from a position of jurisdiction this is a case that has to go forward it cannot be dismissed based on a lack of a public disclosure and I want to make it clear that it doesn't really matter because Dr. Beck was not providing any information from himself that was public he brought to the bar his individual knowledge and he provided the Y from the X to get Z without Dr. Beck no closed loop system would be revealed without Dr. Beck being able to provide the information that was missing we wouldn't have a closed loop system that reveals this illegal scheme that violates both the AKS and the Stark Law and this is a false certification claim and this is a false certification case what we have here is a covenant health system we have the CMC which was also the hospital operated the hospital but they operated as a DBA under CHS the X he added his local expertise first hand expertise not the other stuff I'm thinking about no it was his first hand expertise he knew all these doctors he was on staff he had privileges there he has been a surgeon there for almost three decades he had the URL that document that laid out this strategy this plan being able to get the doctors into  leveraged system not once in your brief have you focused on the admission by Dr. Burke I asked a lot of questions you've been relying on Dr. Beck's ability to digest what was happening from the inside yes Dr. Dr. Beck was digesting the information he was getting from the doctors executives he had executives in his house that he talked to about this closed loop system and they all affirmed it was there and so that's why it was his information that made him the why that allows us to get to Z. I see my time has expired. Thank you. The case is submitted. We'll take a brief recess. We want to thank again the Ben Franklin Hospital for